# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Darren Paul Odell, | Case No. 19-CV-3195 (NEB/HB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| State of Minnesota, | |
| Respondent. | |

This matter comes before the Court on Petitioner Darren Paul Odell's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1.] For the reasons discussed below, the Court recommends denying the Petition and declining to issue a certificate of appealability.

**I.     BACKGROUND**

   **1.     Procedural Background**

In June 2000, authorities charged Odell with one count of first-degree murder. *See* Register of Actions, *State v. Odell*, Case No. 02-K9-00-004970 (hereinafter "*Odell Docket*"). Odell pleaded not guilty and not guilty by reason of mental illness based on Minn. Stat. § 611.026. *See State v. Odell*, 676 N.W.2d 646, 647 (Minn. 2004) (hereinafter "*Odell I*"). Section 611.026 is Minnesota's implementation of the so-called *M'Naghten* rule, under which a defendant can be "excused from liability by reason of insanity" if he can show, by a preponderance of the evidence, "that he either did not

know the nature of his act or that the act was wrong." *Odell I*, 676 N.W.2d at 649 (citing authorities).

In Minnesota, when a defendant pleads not guilty by reason of mental illness, the state court may hold a bifurcated trial: "The first phase . . . determines whether the state has met its burden of proof as to the defendant's guilt. If the defendant is found guilty, the second phase determines whether the defendant has sustained the burden of establishing the mental illness defense." *Id.* at 647 n.2 (citing Minn. R. Crim. P. 20.02). Odell waived his jury-trial right, and at the end of the trial's first phase, the court found that Odell had "acted with premeditation and intent to kill his father." *Id.* at 647. At the end of the trial's second phase, the court determined that Odell had "failed to sustain his burden in proving a mental illness defense." *Id.* On December 9, 2002, the trial court sentenced Odell to life imprisonment. *See id.*; *Odell* Docket.

Odell appealed his conviction; because he had been convicted of first-degree murder, the appeal went directly to the Minnesota Supreme Court. *See* Odell Docket; Minn. R. Crim. P. 29.02, subd. 1(a). That appeal presented essentially one question: "whether the evidence presented at trial was sufficient to prove, by a preponderance of the evidence, that [Odell] did not understand the wrongfulness of his acts on" the day of the crime. *Odell I*, 676 N.W.2d at 648. The Minnesota Supreme Court affirmed the trial court's decision, holding that "sufficient evidence existed to support the trial court's conviction . . . ." *Id.* at 649. The Minnesota Supreme Court issued *Odell I* on March 18, 2004, *see id.* at 646, and there is no indication that Odell filed a petition for certiorari with the U.S. Supreme Court.

In September 2018, Odell filed a postconviction-review petition in the Minnesota trial court.  *See Odell* Docket; Pet. for Post-Conviction Relief, *State v. Odell*, Case No. 02-K9-00-004970 (Minn. Dist. Ct. Sept. 27, 2018).  The trial court denied Odell's petition in an order dated November 27, 2018.  *See* Order Denying Pet. for Post-Conviction Relief, *State v. Odell*, Case No. 02-K9-00-004970 (Minn. Dist. Ct. Nov. 27, 2018) (hereinafter "November 2018 Order").  Odell appealed that trial-court decision—again, directly to the Minnesota Supreme Court.  *See* Minn. R. Crim. P. 29.02, subd. 1(b).  The Minnesota Supreme Court affirmed the trial court's denial of Odell's petition in an order dated July 10, 2019.  *See Odell v. State*, 931 N.W.2d 103, 103 (Minn. 2019) (hereinafter "*Odell II*").

   2.   **Present Petition**

Odell's federal habeas Petition contains four grounds for relief.  (*See* Pet. 6–12.)  Ground One refers to a "news article" published in 2016—in a publication called "Letters Across the Nation"—about Dr. Michael G. Farnsworth, one of the witnesses who had concluded during Odell's trial that Odell did not qualify under the *M'Naghten* rule.  (Pet. 6); *see also Odell*, 676 N.W.2d at 647–48 (discussing Farnsworth's trial role).  This article purportedly stated that Farnsworth had been "found to violate state and federal constitution[al] guidelines."  (Pet. 6 (capitalization corrected).)  As the Court understands it, Odell argues that this 2016 article undercuts Farnsworth's earlier trial testimony that helped secure Odell's conviction.

Ground Two of the Petition contends that the Minnesota Security Hospital in St. Peter, Minnesota—where Farnsworth worked, and where Odell was evaluated—has a

bad reputation, with critical news stories appearing in the *Minneapolis Star-Tribune* in 2013 and 2014. (Pet. 8.) Again, Odell's argument appears to be that these revelations cast doubt on the trial testimony underpinning his conviction. (*See id.*)

Ground Three asserts that Odell received ineffective assistance of counsel at trial. (*Id.* 9.) The argument here is somewhat unclear. Odell notes that his former public defender now works for Hennepin County. (*See id.*) Odell suggests that this attorney did a poor job handling a 2017 case concerning a mentally ill defendant. (*See id.*) Odell's point is presumably that this 2017 case shows some general problem with this public defender, and that as a result, one should question whether that same attorney adequately represented Odell at trial. (*See id.*)

Ground Four of the Petition challenges the Minnesota Supreme Court's decision in *Odell II*. (Pet. 11.) Odell's postconviction-review petition raised (among other issues) the Ground One argument concerning the 2016 article criticizing Farnsworth. The Minnesota Supreme Court held that under Minnesota's statute governing postconviction-review petitions, this argument was time-barred. *Odell II*, 931 N.W.2d at 107.

Specifically, under the relevant part of the statute, a prisoner must bring a postconviction-relief petition within two years after resolution of his direct appeal. *See* Minn. Stat. § 590.01, subd. 4(a). An exception applies if a petitioner "alleges the existence of newly discovered evidence . . . that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney" within the period. *Id.* subd. 4(b)(2). But this exception has its own carveout: for "newly discovered evidence" to permit a postconviction-relief petition outside the standard two-year period, the

4

evidence cannot be (among other things) "for impeachment purposes." *Id.* In *Odell II*, the Minnesota Supreme Court held that the 2016 article that Odell considered "newly discovered evidence" was impeachment-focused evidence, such that the limitations-period exception did not save Odell's relevant claim from being time-barred. *See* 931 N.W.2d at 107.

In Ground Four, Odell argues that the Minnesota Supreme Court's decision was erroneous because he "never brought up any newly discovered evidence laws . . . or any impeachment purposes laws." (Pet. 11.) Odell also seems to suggest that his argument is supported by the Minnesota Supreme Court's decision in *Gassler v. State*, 787 N.W.2d 575 (Minn. 2010).

## II.  ANALYSIS

### 1.  Ground One

Ground One of the Petition rests on new evidence that purportedly undercuts trial testimony about whether Odell qualified as mentally ill under the *M'Naghten* rule. Such reliance on new evidence raises the question of whether Ground One is timely under 28 U.S.C. § 2244(d)(1).[1]

---

[1] As a threshold point—one that will more directly affect Ground Two below—the Court notes that under 28 U.S.C. § 2254(b)(1)(A), a § 2254 petition "shall not be granted unless," in relevant part, "the applicant has exhausted the remedies available in the courts of the State." For present purposes, the Court concludes that Odell exhausted his available state-court remedies for Ground One. His postconviction-review petition discusses the materials noted by Ground One, he raised Ground One–related points on appeal to the Minnesota Supreme Court, and the Minnesota Supreme Court addressed the issue in *Odell II*. *See* Mem. Supp. Post-Conviction Pet. 24–25, *State v. Odell*, Case No. 02-K9-00-004970 (Minn. Dist. Ct. Sept. 27, 2018) (hereinafter "Mem. ISO *Odell II*

Section 2244(d) establishes the limitations period for filing a § 2254 petition:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Ground One suggests that an article published in 2016 justifies a grant of habeas relief. (*See* Pet. 6.) This suggests that § 2244(d)(1)(D) provides the relevant limitations period. Odell does not say when he actually discovered the article, but the Court assumes

---

District-Court Petition"); Pet. 2, 4, *State v. Odell*, No. 19-0059 (Minn. Jan. 11, 2019) (hereinafter "*Odell II* Appellate Petition"); *Odell II*, 931 N.W.2d at 107.

6

for present purposes that if Odell had been exercising due diligence, he should have been aware of the article (or the relevant facts presented by the article) by December 31, 2016, at the latest.[2] Given that date, Odell's deadline to raise Ground One in a § 2254 petition was December 31, 2017. Odell filed the present Petition on December 30, 2019, so Ground One is untimely.

To be sure, § 2244(d)(2) tolls the § 2244(d)(1) limitations period during the pendency of a "properly filed application for State post-conviction or other collateral review." And here, Odell filed a postconviction-relief petition on September 27, 2018, which the Minnesota Supreme Court ultimately resolved on July 10, 2019. *See* Odell Docket. Unfortunately for Odell, however, his state-court petition does not make Ground One timely.

By the time Odell filed his postconviction-relief petition in September 2018, his deadline to file a § 2254 petition based on Ground One had already long expired. The filing of a state-court postconviction-relief petition merely tolls existing limitations periods; it does not restart the clock on any limitations periods that have already expired. *See, e.g.*, *Jackson v. Ault*, 452 F.3d 734, 735–36 (8th Cir. 2006) ("The one year AEDPA limit for federal habeas filing cannot be tolled after it has expired.") (citing *Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 853 (8th Cir. 2003)); *Canada v. Miles*, No. 17-CV-1043 (JNE/SER), 2017 WL 11504886, at *3 (D. Minn. Nov. 22, 2017) (citing *Ferguson v. Palmateer*, 321 F.3d 820, 823 (8th Cir. 2003)), *R. & R. adopted*, 2018 WL

---

[2] The *Odell II* Appellate Petition suggests that the 2016 article was published in the relevant publication's issue for "Summer 2016." *See Odell II* Appellate Pet. 2.

7

10466850 (D. Minn. Mar. 12, 2018). As a result, Odell's petition did not shift his already-expired deadline for raising Ground One in federal court.[3]

Because Ground One is time-barred, the Court recommends that the Petition be dismissed with prejudice as to that ground.

### 2. Ground Two

Like Ground One, Ground Two points to certain historical materials and claims that they undermine conclusions that the trial court reached about Odell's mental condition. Unlike Ground One, however, Odell did not raise this specific issue with the Minnesota Supreme Court. The Court must therefore determine whether Odell has properly exhausted his state-court remedies as to Ground Two—and if not, what effect that has on his ability to raise Ground Two here and now.

Under 28 U.S.C. § 2254(b)(1)(A), a § 2254 petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." The U.S. Supreme Court has explained this requirement as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a

---

[3] Section 2244(d)(1)'s timeliness provision is subject to equitable tolling. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631, 634 (2010). But this is "'an exceedingly narrow window of relief'" that a petitioner is entitled to only if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Gordon v. Arkansas*, 823 F.3d 1188, 1195 (8th Cir. 2016) (quoting cases). Odell provides no explanation for missing his § 2244(d)(1) deadline, much less any "extraordinary circumstances." Equitable tolling does not plausibly apply here.

8

> state supreme court with powers of discretionary review),
> thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotation marks omitted); *see also, e.g.*, *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015) (quoting *Baldwin*). A claim has been "fairly presented" to the state courts if "the state court rules on the merits of [the petitioner's] claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *Morey v. Titus*, No. 19-CV-0253 (NEB/HB), 2019 WL 3539938, at *5 (D. Minn. June 10, 2019) (quoting *Gentry*), *R. & R. adopted*, 2019 WL 3537217 (D. Minn. Aug. 2, 2019). In Minnesota, fair presentation requires presentation to the Minnesota Supreme Court. *See, e.g.*, *Latimer v. Smith*, 351 F. Supp. 3d 1218, 1224 (D. Minn. 2018) (citing *Baldwin*).

As best as the Court can tell from the Petition and state-court records of Odell's appeal, Odell mentioned Ground Two in his postconviction-relief petition, but then on appeal failed to present Ground Two to the Minnesota Supreme Court. *See* Mem. ISO *Odell II* District-Court Petition 24 (listing articles); *Odell II* Appellate Pet. (no discussion of articles); Pet'r's Reply to Resp't's Answer to Informal Brief, *State v. Odell*, No. 19-0059 (Minn. Mar. 18, 2019) (same). This means that Odell has not fairly presented Ground Two to Minnesota's state courts.

If a habeas petition contains claims that have not been fairly presented to the highest relevant state court, a court must determine whether those claims are (1) unexhausted and may still be presented to the state court, or (2) procedurally

defaulted by operation of an independent and adequate state procedural rule precluding further litigation in the state courts. *See* 28 U.S.C. § 2254(c); *Fraction v. Minnesota*, 678 F. Supp. 2d 908, 916–17 (D. Minn. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Husten v. Smith*, No. 18-CV-2712 (ECT/SER), 2018 WL 6251999, at *3 (D. Minn. Nov. 1, 2018) (citing *Fraction*), *R. & R. adopted*, 2018 WL 6250609 (D. Minn. Nov. 29, 2018).

Under Minnesota law, "an offender may not file a postconviction petition to assert a claim that previously was raised on direct appeal or that could have been but was not raised on direct appeal"; furthermore, "matters raised or known but not raised in an earlier petition for postconviction relief will generally not be considered in subsequent petitions for postconviction relief." *Oates v. State*, No. A15-0788, 2016 WL 687465, at *2 (Minn. Ct. App. Feb. 22, 2016) (citing Minnesota authorities; internal quotation marks omitted). In this case, Odell gives no reason why he failed to present Ground Two to the Minnesota Supreme Court. As a result, if he tries to raise Ground Two in the Minnesota state courts, he will be barred from doing so by the state's procedural rules for postconviction-relief petitions. The Court thus concludes that Ground Two is procedurally defaulted.

Where a petitioner's claim is procedurally defaulted, a court must dismiss the claim unless the petitioner can demonstrate "cause and prejudice for the procedural default," *Dretke v. Haley*, 541 U.S. 386, 393 (2004), or that "failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750. With respect to the cause-and-prejudice prong, Odell provides no explanation for failing

10

to fairly present Ground Two to the Minnesota Supreme Court.  Given that, at that time, Odell plainly knew about the articles underpinning Ground Two—he raised them to the state district court, after all—the Court cannot conceive of any plausible explanation.  Odell thus has not shown cause and prejudice excusing his procedural default.

Nor does the miscarriage-of-justice exception apply here.  That exception applies only "to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (quoting *Schlup*, 513 U.S. at 329) (internal quotation marks and brackets omitted); *see also Deaton v. Kelley*, 684 F. App'x 598, 599 (8th Cir. 2017) (quoting *McQuiggin*).  The Petition makes no showing of how the articles he references meet this heavy burden,[4] and the Court's review of Odell's argument in his postconviction-review petition does not persuade otherwise.

---

[4] Odell does mention an "interest of justice" doctrine (Pet. 6–11), but this appears to refer to a provision of Minnesota's statute for postconviction-review petitions.  Under Minn. Stat. § 590.01, subd. 4(a), there is generally a two-year limitations period for a prisoner to file a postconviction-review petition.  Notwithstanding that limitations period, Minnesota courts may review a postconviction-review petition if (among other things), "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." *Id.* subd. 4(b)(5).  To the extent Odell seeks to argue that the Minnesota Supreme Court misapplied § 590.01, subd. 4(b)(5)'s interest-of-justice exception, that is a state-law question into which this Court will not intrude. *Cf. Ring v. Arizona*, 536 U.S. 584, 603 (2002) (observing that state supreme court's "construction of the State's own law is authoritative" (citing *Mullaney v. Wilber*, 421 U.S. 684, 691 (1975)).  To the extent that Odell's references here are meant to invoke the miscarriage-of-justice exception, they do not persuade the Court that the newspaper articles at issue "show[] that it is more likely than not that no reasonable juror would have convicted" Odell.

11

In summary then, Odell has procedurally defaulted Ground Two of the Petition and has not shown that any exception to the procedural-default doctrine applies. As a result, the Court concludes that Ground Two should be dismissed.

### 3. Ground Three

Ground Three of the Petition suggests that news stories about Odell's trial attorney—specifically, about the attorney's later handling of a case with a mentally ill client—means that Odell himself received ineffective assistance of counsel. (Pet. 9.) Odell raised this argument with the Minnesota Supreme Court, but that court did not address it. *See Odell II* Appellate Pet. 5 (raising argument); *Odell II*, 931 N.W.2d at 106–07 (no discussion of argument). Indeed, Odell appears to have raised this argument with the trial court as well, and that court also did not address it. *See* Mem. ISO *Odell II* District-Court Pet. 26 (raising argument); November 2018 Order 3–8 (no discussion of argument).

These circumstances raise the question of how this Court should assess a habeas petition raising an issue that was fairly presented below, but that no state court addressed. The U.S. Supreme Court has provided the following answer:

> When . . . there is no reasoned state-court decision on the merits, the federal court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. If such disagreement is possible, then the petitioner's claim must be denied. We have often emphasized that this standard is difficult to meet because it was meant to be.

12

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (cleaned up).  Revising this wording slightly, this Court's task is to (1) determine what arguments could have supported a decision by the Minnesota courts rejecting Odell's ineffective-assistance argument, then (2) ask whether reasonable jurists could deem those arguments consistent with relevant Supreme Court precedents.  If they could, this Court must reject Odell's argument.[5]

In this case, there is a clear argument, based in Supreme Court precedent, in favor of rejecting Ground Three.  Under *Strickland v. Washington*, to raise an ineffective-assistance claim, a habeas petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the petitioner's defense.  466 U.S. 668, 687 (1984); *see also, e.g.*, *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland*).  As the test suggests, a petitioner must show that the counsel's performance was deficient in the petitioner's own case.  Ground Three gives no specific indication of how Odell's counsel's performance was deficient in his case, and thus unsurprisingly also does not indicate how any performance defects prejudiced Odell's defense.  Given this, a Minnesota court plainly could find that Odell has failed to show either *Strickland* prong.

Seen this way, it is easy to determine whether reasonable jurists could deem the argument against Ground Three consistent with relevant Supreme Court precedent.  They plainly could—indeed, the argument above stems directly from the Supreme Court's own

---

[5]  Odell, it should be noted, provides no analysis along these lines.

test for when counsel is ineffective. As a result, the Court concludes that Odell's Ground Three should be rejected.

### 4. Ground Four

As discussed above, Ground Four argues that the Minnesota Supreme Court misapplied Minnesota law in various ways. As far as the Court can tell, Ground Four does not claim any federal-law error. This raises the question of whether asserted state-law errors can ground a federal habeas petition.

Section 2254(d) limits the grounds on which a federal habeas petitioner can pursue relief. In relevant part, a § 2254 application "shall not be granted with respect to any claim adjudicated on the merits in State court proceedings" unless that claim's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States . . . ."[6]

Odell appears to challenge the Minnesota Supreme Court's decision in *Odell II* on two grounds. First, he suggests that when the Minnesota Supreme Court addressed his arguments, it improperly applied Minnesota's state-law rule setting a limitations period (with certain exceptions) for petitions for postconviction review. Second, he suggests that the Minnesota Supreme Court failed to take into account the Minnesota decision in *Gassler v. State*.

---

[6] Review under § 2254 is also possible where the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," but Ground Four does not assert an unreasonable factual determination. *See* Pet. 11.

Both of these grounds, however, rest only on state law. Whether the Minnesota Supreme Court properly interpreted a state statute is plainly a state-law ground. As for *Gassler*, the Minnesota Supreme Court in that case addressed Minnesota postconviction-relief-petition statutes, and did not discuss or rely in federal law at all. *See generally Gassler*, 787 N.W.2d at 582–87 (containing argument section of opinion; no consideration of federal-law issues).

Because Ground Four raises no federal-law issues, it is not a matter this Court may address in a § 2254 petition. The Court therefore recommends that Ground Four of the Petition be dismissed.

With the recommendation of Ground Four's dismissal, this Court has recommended the dismissal of all of the Petition's claims. The Court therefore recommends that the Petition be dismissed in its entirety.

### 5. Certificate of Appealability

Before appealing a final ruling on a federal habeas petition, a state prisoner must be granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). The Court cannot grant such a certificate unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). Furthermore, when—as here—grounds of a habeas petition are denied on procedural grounds without reaching the underlying merits,

"a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the Court's view, it is unlikely that jurists of reason, including the Court of Appeals for the Eighth Circuit, would not debate that (1) Ground One of the Petition is time-barred; (2) Ground Two is procedurally defaulted; (3) Ground Three would be denied on the merits; and (4) Ground Four presents a state-law issue outside this Court's purview. As a result, the Court recommends that a COA not be issued.

## RECOMMENDATION

For the reasons set forth above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Darren Paul Odell's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED**;

2. A certificate of appealability **NOT BE GRANTED**; and

3. Judgment be entered accordingly.


Dated: March 16, 2020              s/ *Hildy Bowbeer*
                                   HILDY BOWBEER
                                   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).